# CIRCUIT COURT OF FAIRFAX COUNTY

Commonwealth of Virginia

v.

Quang Alexander Gnoc Do

June 4, 2013

Case Nos. FE-2012-1119 & FE-2012-1120

By Judge R. Terrence Ney

This matter came before the Court on May 8, 2013, upon the Defendant's, Quang Alexander Gnoc Do ("Do"), Motion to Suppress the Evidence Directly and Indirectly Obtained as the Result of the Unconstitutional Search.

After oral arguments, the Court took the matter under advisement. The following embodies the Court's ruling.

*Facts*

These facts are from those stipulated by the parties at the March 29, 2013, hearing. Do's Motion to Reopen the Evidentiary Hearing on his Motion to Suppress the Evidence is denied. The Court accepts Do's additional evidence as accurate for the purpose of deciding the Motion to Suppress the Evidence.

On December 16, 2011, a Detective in the Fairfax County Police Department, Detective Nick Boffi, initiated a review of a list of Internet Protocol ("IP") addresses which had been recently identified as sharing child pornography images and videos through a peer-to-peer network. Detective Boffi conducted this review through the use of monitoring and searching software only available to law enforcement. This software is able to isolate and target the geographic location of the peer-to-peer network user's IP address and is also able to monitor whether a particular user is logged on to the peer-to-peer network.

During this particular search, Detective Boffi noticed that one particular IP address, 96.255.184.108, which was physically located in Fairfax County, was sharing at least thirty files of suspected child pornography. Detective Boffi downloaded a single video entitled "PTHC Pattaya Hooker BJ" from the specific IP address which he had been observing. The video showed a prepubescent female engaged in oral and vaginal sex with an adult male as well as an early teen female engaged in similar acts with an adult male.

After Detective Boffi identified this video to be child pornography, he issued an administrative subpoena to Verizon FIOS, the internet provider for that IP address, and requested information on the IP address. As a result, Verizon FIOS provided information which showed that the IP address belonged to Tram Le of 3813 Chanel Road, Annandale, Virginia. This residence is located within Fairfax County.

Subsequently, another Fairfax County Detective, Detective Anne Rizza, took over the investigation. Detective Rizza discovered that a family of four lived at the Annandale, Virginia, residence associated with the IP address.

On December 15, 2012, Detective Boffi again reviewed the peer-to-peer network for additional activity associated with the IP address and saw that five more files were being shared by the IP address on the network. Detective Boffi downloaded one of these files and found that it, like the first downloaded file, also contained images of child pornography.

On January 18, 2013, members of the Fairfax County Police Department along with Detective Rizza executed a search warrant on the Annandale, Virginia, residence. Do lived there, and his computer was seized by the police. After being evaluated by a forensic team, it was found to contain multiple child pornography videos. After reviewing eight of the videos, Detective Rizza obtained warrants for Do's arrest. He is charged with eight counts of possession of child pornography and two counts of distribution of child pornography.

In his Motion to Suppress the Evidence, Do argues that the software used by the police to search the peer-to-peer network and identify his IP address without a warrant violates his right to privacy and is an unconstitutional search under the Fourth Amendment of the United States Constitution. These facts present an issue of first impression in Virginia.

*Analysis*

A. *Standard of Review — Fourth Amendment*

The Fourth Amendment to the United States Constitution states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and

the persons or things to be seized." U.S. Const., Amend. 4; *see Foltz v. Commonwealth,* 58 Va. App. 107, 122 (2011). In *Katz v. United States,* the United States Supreme Court held that "[t]he Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *Katz v. United States,* 389 U.S. 347, 351 (1967). Justice Harlan's concurrence in Katz delineates the twofold requirement for Fourth Amendment protection. First, "a person [must] have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable'." *Id.* at 361.

## B. *The Fourth Amendment and Peer-to-Peer Networks*

Here, Do was allegedly sharing child pornography files which he had downloaded through a peer-to-peer network, eDonkey, to other users of that peer-to-peer network. The eDonkey network is open to the public and is comprised of millions of users. It is used for file sharing.

"File sharing" is making available to other users of a peer-to-peer network material that one has downloaded directly to one's computer and then made available on the peer-to-peer network. The user of the network may also view materials placed on it by other users and download those materials to one's own computer if one wishes to do so. In some respects a peer-to-peer network is akin to what used to be known as a communal, or private, or neighborhood lending library.

Do argues that the warrantless use of the software to search this peer-to-peer network for child pornography is unconstitutional because this network is different from other peer-to-peer networks. In the eDonkey network, each individual IP address cannot be identified by other network users. Additionally, the user does not control the fact that the files a user downloads on the network are shareable or that another user can search for and share these files while they are still downloading. On the other hand, the Commonwealth argues that, because Do's files of child pornography were available to any other user of the peer-to-peer network for downloading and viewing, he has no reasonable expectation of privacy under the Fourth Amendment.

Do relies on several U.S. Supreme Court decisions. None of these cases address the specific issue before this Court, namely whether the use of a search tool to monitor a peer-to-peer network and identify Do's IP address was a search which implicates the Fourth Amendment. In fact, the cases relied on by Do only address physical intrusions or trespass on a defendant's private property.

First, Do cites *United States v. Jones.* In that decision, the U.S. Supreme Court addressed whether the use of a GPS tracking device

on the defendant's vehicle constituted a search or seizure within the Fourth Amendment. *United States v. Jones*, 123 S. Ct. 945 (2012). The court traced the history of Fourth Amendment search and seizure opinions, noting that "the text of the Fourth Amendment reflects its close connection to property, since, otherwise, it would have referred simply to 'the right of the people to be secure against unreasonable searches and seizures'; the phrase 'in their persons, houses, papers, and effects' would have been superfluous." *Id.* at 949. Underscoring that to be so is Justice Harlan's prior concurrence in *Katz*, which said that a violation occurs when government officers violate a person's "reasonable expectation of privacy," the most frequently applied standard in Fourth Amendment cases. *Id.* at 950 (*citing Katz*, 389 U.S. at 360).

The court there stated that an individual's rights do not "rise and fall with the *Katz* formulation. At bottom, we must 'assure preservation of that degree of privacy against government that existed when the Fourth Amendment was adopted'." *Jones*, 123 S. Ct. at 950 (*quoting Kyllo v. United States*, 533 U.S. 27, 34 (2001)). The Court cited *Alderman v. United States*, which stated that "we do not believe that *Katz*, by holding that the Fourth Amendment protects persons and their private conversations, was intended to withdraw any of the protection which the Amendment extends to the home. . . ." 394 U.S. 165, 176 (1969). Therefore, a trespass or physical invasion by the Government in an effort to obtain information is still an element of the test for a violation of the Fourth Amendment prohibition against unreasonable searches and seizures. *Jones*, 123 S. Ct. at 951-52. Because the Government had physically installed the GPS on the defendant's vehicle while the vehicle was in the defendant's possession, the *Jones* court held that "the Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements constitutes a 'search'." *United States v. Jones*, 123 S. Ct. at 950. No physical installation occurred here.

Do next points to *Florida v. Jardines*, 133 S. Ct. 1409. In that decision, the Supreme Court considered "whether using a drug-sniffing dog on a homeowner's porch to investigate the contents of the home is a 'search' within the meaning of the Fourth Amendment." *Id.* Like the search in *Jones*, the search in *Jardines* involved a physical intrusion into what the court found to be a different but also constitutionally protected area, the front porch. The court held that the front porch is constitutionally protected because it is an " 'area immediately surrounding and associated with the home,' what our cases call the curtilage, for Fourth Amendment purposes." *Id.* at 1414. As a result, the use of the trained police dog to investigate the home and the immediate surrounding area constituted a "search" under the meaning of the Fourth Amendment. *Id.* at 1417. Again, that case is unlike this one because it involved a physical intrusion.

Here, there was no physical intrusion. When Detective Boffi used the software program to monitor the peer-to-peer network of which Do was a member, he did not gain access to any more portions of Do's computer than any other member of the peer-to-peer network. Detective Boffi was not able to access any other files on Do's computer; he was only able to access the folder with the files that Do chose to share on the peer-to-peer network. Do knew that these files were available to the other millions of users on the peer-to-peer network. In fact, Do joined the peer-to-peer network in order to share files with the other users on that network, the main purpose of a peer-to-peer network. There was no physical intrusion by Detective Boffi; he did not enter Do's house, turn on Do's computer, and search through his files. Detective Boffi only searched through files that Do had made available to the public through the peer-to-peer network.

*Katz* states that "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Katz*, 389 U.S. at 351. Because Do allegedly knowingly shared child pornography files on the peer-to-peer network these files are not subject to Fourth Amendment protection. Even if Do chose the specific peer-to-peer network eDonkey based on the fact that one user's IP address is not identifiable to another user, that is not an indication that he wanted to keep his shared files private. Do was aware that the files he shared on the peer-to-peer network would potentially be viewed by each user of it. If he had never made the file public, Detective Boffi could never have discovered it.

This case is most similar to those cited by the Commonwealth that address file sharing and more specifically peer-to-peer networks and Fourth Amendment protection. In *United States v. Barrows*, a city employee brought his personal computer to work and connected it the city computer in order to share files. *United States v. Barrows*, 481 F.3d 1246 (10th Cir. 2007). A reserve police officer visiting city hall discovered a series of files on the employee's computer with sexually suggestive names which were found to contain child pornography. *Id.* at 1248. The United States Court of Appeals for the Tenth Circuit Court stated that the employee "knowingly networked his machine to the city computer for the express purpose of sharing files. . . . [The employee] knew the contents of his machine were not wholly private." *Id.* at 1249. The court opined that "those who bring personal material into public spaces, making no effort to shield that material from public view, cannot reasonably expect their personal materials to remain private." *Id.* The court held that the employee did not maintain a reasonable expectation of privacy. *Id.*

In *United States v. Sawyer*, the defendant also used a peer-to-peer network for file sharing. 786 F. Supp. 2d 1352 (N.D. Ohio 2011). However, unlike Do here, the defendant in *Sawyer* used a "closed" network in which a user had to receive permission to download files from another user.

The court stated that "a person who grants public access to folders on his computer cannot be said to have an objectively reasonable expectation of privacy in those folders, as any member of the public using that program has free and unfettered access to them." *Id.* at 1356; *see also, United States v. Samples,* 2011 U.S. Dist. LEXIS 119040, 13 (N.D. Tex. Sept. 15, 2011) (there is "no basis for challenging the use of forensic software to download files from a peer-to-peer network because a user of file-sharing software has no reasonable expectation of privacy in his public files"). The court noted that, even though the use of a "closed" network makes an expectation of privacy somewhat more reasonable when compared with an open network, when any user can download and see the files, "the rationale of the decisions analyzing open file sharing programs is still persuasive. . . ." *Id.* The defendant did not have a reasonable expectation of privacy in his files shared over the peer-to-peer network even though it was "closed." *Id.*

The most recent decision cited by the Commonwealth is *United States v. Conner,* 2013 U.S. App. LEXIS 7437 (6th Cir. 2013). In that case, the defendant argued that he had a "legitimate expectation of privacy" in the child pornography files that he shared through LimeWire, a file-sharing network similar to the one used here. *Id.* at 8. The court acknowledged that "generally speaking, computer users have a reasonable expectation of privacy in data stored on a home computer." *Id.* at 9. However, the court differentiated the various types of electronic data and communications:

> [P]eer-to-peer file sharing is different in kind from email, letters, and telephone calls. Unlike these forms of communication, in which third parties have incidental access to the content of messages, computer programs like LimeWire are expressly designed to make files on a computer available for download by the public, including law enforcement. Peer-to-peer software users are not mere intermediaries, but the intended recipients of these files. Public exposure of information in this manner defeats an objectively reasonable expectation of privacy under the *Fourth Amendment.*

*Id.* at 10 (*citing Katz v. United States,* 389 U.S. 347, 351 (1967)). The defendant claimed that he was not aware that the downloaded files from LimeWire would be available to the public and that he was unable to turn off the automatic downloading feature. *Id.* at 11. The court rejected his "assertions of ignorance." *Id.* "[The defendant's] subjective intention not to share his files d[oes] not create an objectively reasonably expectation of privacy in the face of [the] widespread public access to his files LimeWire created." *Id.* The court found that the defendant did not have a legitimate expectation of privacy in the files he shared on LimeWire. *Id.* at 10.

Unlike the cases cited by Do, the cases cited by the Commonwealth, with the exception of *Barrows*, which addresses file sharing that did not occur through a peer-to-peer network, address file sharing over peer-to-peer networks. The facts of each are strikingly similar to the facts at hand. Like the defendant in *Barrows*, here Do knowingly linked his computer to another computer for the specific purpose of sharing files. He made no attempt to keep his files private.

Also, like the defendant in *Sawyer*, Do used a peer-to-peer network for file sharing. The defendant in Sawyer made an attempt at keeping his files relatively private by joining a "closed" network (unlike Do). In *Sawyer*, the Court found that joining a "closed" network was not enough to make the defendant's expectation of privacy reasonable for Fourth Amendment purposes. Here, Do did not take the step of joining a "closed" network. None of the users on the eDonkey network had to request permission to download his files. All of Do's files were automatically available for download by any and all users of the eDonkey network. Do exposed his files to the public knowingly by joining a network for the express purpose of file sharing.

Finally, here Do claims ignorance just as the defendant did in *Conner*. Do asserts that he was unable to turn off the automatic downloading feature of eDonkey and that he did not intentionally download the child pornography files. However, Do knowingly joined an open file sharing network used by millions of people and for the express purpose of sharing files. He knew that his files would be accessible to other users of eDonkey just as their files were available to him. He did nothing to limit access to his files even though he argues that he joined eDonkey instead of another peer-to-peer network because one user's IP address is not disclosed to another user. He could have manually opted out of automatic sharing and deleted the child pornography files from his computer. He did neither. The reasoning of Conner applies here; "[The defendant's] subjective intention not to share his files d[oes] not create an objectively reasonably expectation of privacy in the face of [the] widespread public access to his files [eDonkey] created." *Id.* at 11.

Simply put, why did Do go onto a peer-to-peer network? He did so in order to share his downloaded files with others and to obtain files from others on the network.

Could Do not have obtained child pornography without joining the peer-to-peer network? Of course he could have. He could have done so in the first instance before joining the peer-to-peer network. He did not have to share anything from his computer which he had downloaded directly. But he did so.

Could Do have chosen to get out of the peer-to-peer network? Of course he could have. But he chose not to do so, and this decision was made at his own risk.

## *Conclusion*

For these reasons, the Defendant's Motion to Suppress the Evidence Directly and Indirectly Obtained as a Result of an Unconstitutional Search is denied.